## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAISINGER, ET AL.                     :
                                      :          CIVIL ACTION
        v.                           :
                                      :          NO. 18-855
WALMART STORES, INC., ET AL.          :

### MEMORANDUM

Presently before the Court are Defendants' Omnibus Motions *in Limine*.  (ECF No. 170.)

For the following reasons, Defendants' Motions are granted in part and denied in part as follows:

(1) Plaintiffs are precluded from introducing evidence or arguments that Defendants spoliated the sign pole involved in the accident;

(2) Plaintiffs are precluded from introducing evidence or arguments that Defendants spoliated the surveillance footage of the accident, and we will not issue an adverse inference or other spoliation sanction;

(3) The reports, opinions, and testimony of Scott Jacoby are inadmissible;

(4) Defendants' motion to exclude the reports, opinions, and testimony of Irene Mendelsohn is denied;

(5) The parties are precluded from introducing evidence of the Social Security Administration's disability determination of Ms. Kaisinger and introducing opinions that rely on or reference the Social Security Administration's determination;

(6) Defendant's motion to exclude any opinion based on Dr. Joely Esposito's initial testing is denied, and;

(7) We defer ruling on the admissibility of social media posts of Defendants' 30(b)(6) deponent Alexander Abramczyk until trial.

## I.      BACKGROUND

In this negligence action, Plaintiff Janice Kaisinger alleges that she was injured at a

Walmart store in Philadelphia when a pole and sign fell and struck her on the head on or about

December 26, 2015.  (Not. of Removal, ECF No. 1, ¶¶ 2, 4.)  She and her husband, Plaintiff

Patrick Kaisinger have filed negligence and loss of consortium claims against Defendants.  (*Id.*, ¶¶ 1, 4-5.)

Previously, we ruled on two motions *in limine* on the merits (ECF Nos. 151, 152) and denied nineteen motions without prejudice and without ruling on the merits (ECF Nos. 74, 153). Our September 29, 2022 Order required the parties to file any renewed discovery or evidentiary motions in a single omnibus motion.  (ECF No. 153, ¶ 3.)  The Fourth Amended Scheduling Order set a new deadline for filing motions *in limine* and again required that they be submitted in an omnibus motion.  (ECF No. 160.)  In compliance with the operative scheduling Order, Defendants filed omnibus motions *in limine* on March 4, 2024.  (ECF No. 170.)  Plaintiffs did not file a motion *in limine*.[1]  Trial is scheduled for April 29, 2024.  (ECF No. 160.)

## II.    LEGAL STANDARD

Motions *in limine* allow the trial court to rule on the admissibility and relevance of evidence.  *Bradley v. Pittsburgh Bd. Of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).  "The purpose of a motion *in limine* is to bar 'irrelevant, inadmissible, and prejudicial' issues from being introduced at trial, thus 'narrow[ing] the evidentiary issues for trial[.]'"  *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (quoting *Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering, Co.*, No. 10-199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012)).  "Evidence should only be excluded on a motion *in limine* if it is clearly inadmissible on all potential grounds.  The movant bears the burden of demonstrating that the

---

[1] Plaintiffs introduced each section of their Opposition by stating that the Court had already ruled on the instant issue in prior Orders (ECF Nos. 74 and 153).  Prior to this Memorandum and accompanying Order, the Court only ruled on two motions *in limine* on the merits.  (*See* ECF Nos. 151-152.)  The Court has given the parties multiple opportunities to renew their motions *in limine*.  (*See, e.g.*, ECF Nos. 73, 74, 153, 160.)  Accordingly, any motion *in limine* that was not filed on March 4, 2024, is deemed waived.

evidence is inadmissible on all potential grounds." *Feld v. Primus Techs. Corp.*, No. 12-1492, 2015 WL 1932053, at *1 (M.D. Pa. Apr. 28, 2015) (citation omitted).

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The trial judge serves as a gatekeeper who ensures "that any and all expert testimony or evidence is not only relevant but also reliable." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 805 (3d Cir. 1997) (citing *Daubert*, 509 U.S. at 589). The party offering an expert bears the burden of demonstrating the admissibility of the expert's opinion. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

Federal Rule of Evidence 702 contains a "trilogy" of requirements: "qualification, reliability and fit." *Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "Qualification refers to the requirement that the witness possess specialized expertise." *Estate of Schneider*, 320 F.3d at 404. This requirement has been interpreted liberally, and "a broad range of knowledge, skills, and training" may qualify someone as an expert. *Id.* The reliability element requires that the testimony "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; and the expert must have good grounds for his or her opinion." *Id.* (internal quotations and citations omitted). The Third Circuit has articulated factors that trial courts should consider in evaluating the reliability of an expert's opinion, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been

established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994).  To satisfy the fit requirement, "testimony must be relevant for the purposes of the case and must assist the trier of fact."  *Estate of Schneider*, 320 F.3d at 404.

## III.   DISCUSSION

### A.   Evidence or Argument Related to the Spoliation of the Sign Pole

Defendants produced to Plaintiffs an exemplar of the sign pole that hit Ms. Kaisinger but they did not produce the exact pole that fell on her.  (Mot., ECF No. 170, at 11, 13).  Defendants seek to exclude evidence or argument that Walmart spoliated the sign pole and any spoliation sanction that may follow from a finding that Defendants spoliated the evidence.  (*Id*.)  Defendants argue that Plaintiffs have not put forth any evidence that Defendants intentionally misplaced or disposed of the particular sign pole at issue to warrant spoliation sanctions.  (*Id*. at 11, 14-15.)

In opposition, Plaintiffs maintain that bad faith may be inferred from circumstantial evidence and that "[w]here a party claims to have evidence upon request, and then loses it, spoliation is likely to be found."  (Opp'n, ECF No. 171, at 24.)

Defendants' Motion is granted.  Plaintiffs have not met their burden to prove that Defendants spoliated the sign pole at issue in this action.  Spoliation occurs when "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party."  *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir.

2012).  The party seeking a spoliation sanction bears the burden of proving these factors.  *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 654 (E.D. Pa. 2015).

"[D]estruction that occurs as a result of inadvertence, routine practice, or accident is not spoliation."  *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 269 (W.D. Pa. 2012).  Instead, "a finding of bad faith is pivotal to a spoliation determination."  *Bull*, 665 F.3d at 79.  When a party alleges that evidence was withheld, they must present "evidence that the documents are withheld, rather than—for instance—misplaced," and "[w]ithholding requires intent."  *Id*.  In other words, we must be "convinced that . . . [a party] intended to actually withhold the original documents from [the opposing party] before we can conclude that sanctionable spoliation occurred."  *Id*.

Here, Plaintiffs claim that less than ten days after the incident, Plaintiffs' counsel sent a letter to Defendants requesting that the pole and display involved in the incident be preserved, that the pole was initially preserved, and that Plaintiffs' counsel was provided confirmation of the preservation of evidence.  (Opp'n at 4, 7-8.)  However, two days later, Walmart asset protection claimed in an internal document that it no longer had the particular pole.  (*Id*. at 4, 8.)  Plaintiffs deposed multiple Walmart employees regarding the preservation of the pole.  (Mot. at 11-12.)  However, Plaintiffs have not put forth evidence from which we can infer that Defendants intentionally withheld the particular sign pole that fell on Ms. Kaisinger and that its disappearance was not a "result of inadvertence, routine practice, or accident."  *Bozic*, 912 F. Supp. 2d at 269; (*see* Opp'n at 4-9.).  Plaintiffs maintain that spoliation is "likely to be found" when a party first claims to have evidence but then loses it.  (Opp'n at 24.)  However, not only

have Plaintiffs misstated the law, the cases that Plaintiffs cite do not support this proposition and are inapposite.[2]  Accordingly, Defendants' Motion is granted.

### B.  Evidence or Argument Related to the Spoliation of Surveillance Footage

Defendants seek to preclude Plaintiffs from arguing that they destroyed or failed to preserve surveillance video of the incident.  (Mot. at 15.)  Defendants maintain that no store cameras were directed toward the location of the incident in the Walmart store, and that, as a result, no footage existed.  (*Id*. at 15-18.)  Defendants argue that a spoliation inference can't be drawn when no video footage existed in the first place, and that Plaintiffs have not presented any evidence that video footage existed or that Defendants actively suppressed, withheld, or destroyed it.  (*Id*. at 19-20.)

In opposition, Plaintiffs argue that Defendants spoliated all video surveillance that may have been captured from the time Ms. Kaisinger arrived at Walmart to the time she left the

---

[2] Plaintiffs cite five cases for the proposition that "where a party claims to have evidence upon request, and then loses it, spoliation is likely to be found."  (Opp'n at 24).  However, they are inapposite and do not support this proposition.  For example, in *Patel v. Havan Bar, Rest. and Catering*, No. 10-1383, 2011 WL 6029983, at *5-6 (E.D. Pa. Dec. 5, 2011), plaintiff alleged that defendant's manager misrepresented to the police that the video system was not functioning on the night of the incident.  *Patel* is distinguishable from the case at hand because neither party alleges that Defendants misrepresented information.  Similarly, in *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005), the district court agreed with the plaintiff that defendant had intentionally and "willfully wiped the computer's hard drive clean . . . when he knew that the computer's memory was relevant to the litigation."  In *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1322 (Fed. Cir. 2011), the district court found that defendant "ordered its outside [] counsel to purge his files relating to the prosecution of the prospective patents in suit" once litigation was reasonably foreseeable.  And in *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 217 (3d Cir. 2020), the district court concluded that deposition testimony "supports the conclusion that there was an intentional destruction of certain documents that were foreseeably relevant" to litigation to satisfy the element of bad faith.  In contrast, here, Plaintiffs have not put forth any evidence that Defendants intentionally or willfully destroyed or withheld the sign pole at issue or directed others to do so.  *Nixon v. Family Dollar Stores of Pennsylvania, LLC*, No. 20-404, 2021 WL 2015188, at *7 (M.D. Pa. May 20, 2021) is also factually distinct from the case at hand as the district court found that defendant failed to preserve video footage because it chose to "sit back and wait."  However, the parties here document the steps that Defendants took to preserve the evidence before they later could not find the sign pole amidst the busy shopping season.  (Opp'n at 4-9, 25; Mot. at 11-12.)

premises and that Defendants failed to take reasonable steps to preserve video evidence.  (Opp'n at 26-28.)  Defendant's Motion is granted.

On January 4, 2016, nine days after the incident, Ms. Kaisinger's initial counsel contacted a Walmart case manager, Janice Durbin, and requested that Walmart "retain and preserve as evidence any photographs and/or premises video, recordings and/or other surveillance." (Ex. 4, ECF No. 171-4.)  This request was renewed in a January 25, 2016 email from counsel to Ms. Durbin, in which counsel wrote, "Please also advise whether or not you or Wal-Mart have store surveillance video, photographs, witness statements, and/or the display pole." (Ex. 6, ECF No. 171-6.)  Ms. Durbin responded that day that "[a]t this point the store tells me there is no video of the area involved," and she reiterated that she has asked the store to "double check the video surveillance as well." (*Id*.)  One Asset Protection Associate at Walmart's Philadelphia location testified that cameras were not directed to the area of the store where the incident took place because there typically was not a lot of theft in that area.  (DeJesus Dep. Tr., Ex. N, ECF No. 170-3, at 283:23-284:11.)  Another employee testified that at the time of the 2015 incident, there were blind spots in the Philadelphia store that cameras did not capture.  (Tarabah Dep. Tr., Ex. O, ECF No. 170-3, at 160:11-15.)  Plaintiffs deposed additional Walmart employees regarding the preservation of surveillance footage.  (*See* Mot. at 7, 15-18; Opp'n at 10-14.)

Defendants rely on *Pace v. Wal-Mart Stores East, LP*, 799 F. App'x 127 (3d Cir. 2020) in support of their Motion.  In *Pace*, an individual filed a negligence action against Walmart after falling at a Walmart store, and in granting summary judgment for defendant, the district court concluded that defendant had not spoliated surveillance footage.  799 F. App'x at 128, 130.  A Wal-Mart Asset Protection Associate who maintained the location's video surveillance records

testified that no video recordings had captured the accident and that no recordings related to the fall had been destroyed.  *Id*. at 129.  The individual fell in a blind spot in the produce section that was not covered by the store's surveillance cameras.  *Id*.  Affirming the district court, the Third Circuit held that the "district court did not abuse its discretion in refusing to find spoliation here because [the plaintiff] cannot show that the alleged video evidence even existed in the first place, much less that it was actually suppressed, withheld, or destroyed."  *Id*. at 130.

Plaintiffs argue that the case of *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475-78 (E.D. Pa. 2020), in which a district court ordered a spoliation sanction for the loss of surveillance footage, supports their position.  (Opp'n at 26-28.)  However, *Bistrian* is not on point.  In *Bistrian*, "all agree[d]" that the cameras in a federal detention facility would have captured footage relevant to the dispute.  448 F. Supp. 3d at 463.  In contrast, here, soon after the incident and after a preliminary investigation, employees of Defendants stated that the videos in the store did not capture the area of the incident.  (*See* Ex. D, ECF No. 170-3, at WM 344, 347.)

As in *Pace*, Plaintiffs have not demonstrated that video footage of Ms. Kaisinger's incident was captured, let alone that it was intentionally suppressed, withheld, or destroyed.  This case is unlike *Bistrian*, which concerned footage that "all agree[d]" existed, as opposed to footage that was not captured in the first place.  Accordingly, Defendant's Motion will be granted.

**C.      Scott Jacoby's Opinion**[3]

Plaintiffs proffer Scott Jacoby as an expert in the fields of retail store displays and retail accident investigation.  (Opp'n at 30-31.)  Defendants argue that Mr. Jacoby lacks the requisite qualifications to testify as an expert and that his report is not reliable because it is speculative, inconsistent with the factual record in the case, and is based on a site inspection performed four years after the incident.  (Mot. at 24.)  In addition, they maintain that a jury can decide whether a display was unsafe based on a sign hitting Ms. Kaisinger, such that Mr. Jacoby does not offer specialized knowledge that will assist the jury's determination.  (*Id.*)

In response, Plaintiffs explain why Mr. Jacoby is qualified and, with respect to the reliability of his opinions, simply state that "Mr. Jacoby's opinions were all made to a reasonable degree of certainty."  (Opp'n at 30-31.)

Based on a review of Mr. Jacoby's report and deposition transcript, we find that Mr. Jacoby's opinions lack sufficient reliability and are inadmissible.[4]  Relevant factors to determine whether an expert's opinion is reliable include "whether a method consists of a testable hypothesis" and "the existence and maintenance of standards controlling the technique's operation."  *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d at 742 n.8.  In his report, Mr. Jacoby

---

[3] Defendants ask us to rule on the admissibility of two of Plaintiffs' experts.  Whether to hold a hearing or rule on the admissibility of expert testimony on a written record alone is within the discretion of the trial court.  *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 153 (3d Cir. 2000); *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).  "A hearing is not required where the district court is presented with a full record."  *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 119 (3d Cir. 2014).  We have reviewed the experts' reports and deposition transcripts and conclude that we have a sufficient basis to rule on this Motion based on the written record alone.  *See Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 455 (D.N.J. 1999).

[4] Plaintiffs suggest that Mr. Jacoby's opinion does not need to satisfy the *Daubert* and Fed. R. of Evidence 702 standard.  (Opp'n at 29.)  However, *Daubert* and Fed. R. of Evidence 702 apply to all experts—not only to scientific experts.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

offers ten ways in which Defendants were negligent and maintains that these failures caused the incident at issue. (Jacoby Rpt., Ex. W, ECF No. 170-4, at 5.) Mr. Jacoby identifies various defects based on a Walmart site visit that he conducted four years after the incident and the testimony from witnesses. He argues that Walmart did not comply with "[c]ustom and standard in the industry." (*Id*. at 3.) However, Mr. Jacoby did not specify in his report or deposition which industry-wide customs and standards he applied to assess Walmart's conduct. Accordingly, his conclusions are not testable or capable of replication or assessment. *See Hamilton v. Emerson Elec. Co.*, 133 F. Supp. 2d 360, 370-74 (M.D. Pa. 2001) (excluding an expert's opinion when he "does not use any discernible methodology" or "provide [any] assurance that his methodology . . . is reliable"). In fact, when questioned at his deposition, Jacoby stated that his opinions were based on his retail experience alone rather than specific industry standards or customs, and he demonstrated that he had limited knowledge of industry-wide practices. (*See, e.g.*, Jacoby Dep. Tr., Ex. X, ECF No. 170-4, at 42:9-15, 113:16-19, 129:1-131:8, 148:9-13.) Mr. Jacoby's opinion is not admissible, and Defendants' Motion will be granted.

### D.   Irene Mendelsohn's Opinion

Defendants seek to exclude the opinion of Irene Mendelsohn, a vocational counselor who opined that Ms. Kaisinger is completely disabled and unable to work. (Mot. at 25.) In forming her opinion, Ms. Mendelsohn interviewed Ms. Kaisinger and reviewed her medical and employment records and the disability determination by the Social Security Administration, among other documents. (*Id*. at 27; Mendelsohn Rpt., Ex. Z, ECF No. 170-4, at 1; Mendelsohn Dep. Tr., Ex. BB, ECF No. 170-4, at 26:21-27:9, 27:17-20, 28:11-29:25, 30:1-32:14, 81:7-19, 203:14-22, 213:21-214:7.)

At her deposition, Ms. Mendelsohn described her methodology: "There is no algorithm. It's a matter of reviewing all of the information that you're provided and making a judgment as to whether the person you're evaluating is capable of working." (*Id*. at 223:14-19.) She continued that we "vocational specialists rely on other treatment providers to give us information as to what somebody's levels of ability are and what their limitations are. And we utilize our education and experience and knowledge in applying it to the labor market and stating what types of work the person could do and what they could earn. And when indicated, we [] also utilize testing, vocational testing, to try to help us make that judgment." (*Id*. at 224:13-22; *see also* 218:15-221:3.)

Defendants argue that Ms. Mendelsohn's opinion is not reliable because at her deposition she conceded that she did not conduct any tests of Ms. Kaisinger and could not identify any generally accepted material in her field that she used to form her opinion. (*Id*. at 26; *see also* Mendelsohn Dep. Tr. at 27:1-16, 33:16-36:5, 221:5-223:19, 226:1-22.) They argue that Ms. Mendelsohn's opinion is unreliable because she "admitted that there is no algorithm to her method and could not explain how her opinion could be tested by another expert in her field." (*Id*. at 27; *see also* Mendelsohn Dep. Tr. 218:15-221:3, 223:21-225:25.) Defendants are also critical that Ms. Mendelsohn did not rely on additional information that they claim is both relevant and available to her, such as Ms. Kaisinger's mental health status at the time of the incident, information concerning Ms. Kaisinger's ability to obtain different employment after the incident, and Ms. Kaisinger's preferences as to when she intended to retire. (*Id*. at 26, 28.) Ms. Mendelsohn's reliance on the Social Security Administration's determination that Ms. Kaisinger is disabled is also problematic, Defendants claim, because it was made before "Plaintiff's more

recent testing performed in 2019 and 2020 that showed [that] she was cognitively intact." (*Id*. at 28; *see also* Mendelsohn Dep. Tr. at 146:2-147:10.)

In opposition, Plaintiffs maintain that Ms. Mendelsohn's opinion is reliable because her vocational assessments require evaluating each individual on a case-by-case basis, reviewing pertinent records, and assessing their earnings. (Opp'n at 34.) Ms. Mendelsohn uses a "standard procedure" to formulate her opinions, and as such, her opinions are reliable. (*Id*.) Defendant's Motion to exclude Ms. Mendelsohn's opinion will be denied.

A "district court should focus on the expert's methods and reasoning when assessing the reliability of an expert's opinion." *Weirich v. Horst Realty Co., LLC*, No. 07-871, 2009 WL 920960, at *7 (E.D. Pa. Mar. 30, 2009) (citing *In re TMI Litig*., 193 F.3d 613, 665 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)). "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'" *In re TMI Litig*., 193 F.3d at 665 (quoting *Kannankeril*, 128 F.3d at 806).

"Vocational rehabilitation is a social science that does not exactly mirror the fundamental precepts of the so-called harder sciences." *Elcock v. Kmart Corp*., 233 F.3d 734, 747 (3d Cir. 2000). "However, [] [j]ust as a scientist would want to duplicate the outcome when evaluating a colleague's claim that he had developed a technique for cold fusion, a vocational rehabilitationist assessing [another expert's] disability determination would want to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated." *Elcock*, 233 F.3d at 747. Whether a vocational counselor meets the *Daubert* standard is a "fact-dependent" determination, "based upon the facts

and procedural history of [the] case." *Orner v. Nat'l Beef Packaging Co., LLC*, No. 13-0837,

2015 WL 8334544, at *10 (M.D. Pa. Dec. 9, 2015).

Courts have found that vocational counselors' opinions have met *Daubert* requirements

when they "relied upon sufficient measurements and observations in forming [their] opinions."

*Orner*, 2015 WL 8334544, at *10. For example, in *Orner*, a vocational expert opined on a

potential reasonable accommodation for a plaintiff. *Id*. at *11. To reach his conclusion, he

reviewed two pertinent treatises, met with the plaintiff, visited her workplace, observed the

environment in which she worked, and researched potential accommodations that would satisfy

plaintiff's needs without posing a hazard to others. *Id*. at *9. The district court concluded that

the expert utilized "a sufficiently reliable methodology" that "can be replicated, tested, verified,

or debunked by defendant's own experts." *Id*. "[G]iven the nature of a vocational rehabilitation

analyst's work, it is reasonable for [an expert's assessment to be based on] a certain amount of

research, investigation, and consultation with the injured individual." *Orner*, 2015 WL 8334544,

at *10; *see also Malcolm v. Regal Ideas, Inc.*, No. 19-239, 2021 WL 3006653, at *2, 4 (E.D. Pa.

July 15, 2021) (holding that a vocational expert's opinions "are a far cry from relying on 'blind

assumptions' about [plaintiff's] condition" and are admissible when their assessment was based

on an in-person examination of plaintiff). When an expert has utilized a "sufficiently reliable

methodology," challenges concerning the factual foundation on which their opinion rests,

including why they did not test a subject or why they deemed some measurements or information

to be irrelevant or relevant, may be vetted through cross-examination. *See Orner*, 2015 WL

8334544, at *9, 11; *Weirich*, 2009 WL 920960, at *4-5.

In contrast, a proffered opinion of a vocational expert is insufficient under *Daubert* when

the expert "relies on the mere fact of his experience as a Vocational Rehabilitation Consultant to

support his conclusions and in essence, requests the Court to take his word for it rather than applying his specialized knowledge to the facts of th[e] case." *Powell v. Anheuser-Busch Inc.*, No. 09-729, 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012).  Instead, "vocational rehabilitation experts 'who rely solely on experience must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinions offered by the expert, and how that experience is reliably applied to the facts.'" *Gyllenhammer v. Am. Nat'l Red Cross*, No. 15-1143, 2018 WL 1956426, at *6 (N.D.N.Y. Jan. 23, 2018) (quoting *Powell*, 2012 WL 12953439, at *6).  Similarly, a report that does not provide "an inkling as to the standards controlling [the expert's] method," *Elcock*, 233 F.3d at 747, "contains no evidence of the methodology used to arrive at his conclusions," "appear[s] to be completely subjective," and "cites to no sources, published or otherwise, to support his conclusion" may be excluded.  *See Weir v. Pioneer Hi-Bred Intern., Inc.*, 2000 WL 35533101 at *4 (N.D. Iowa Oct. 27, 2000).

Based on a review of Ms. Mendelsohn's reports and deposition transcript, we conclude that Ms. Mendelsohn's opinion meets the *Daubert* standard.  Ms. Mendelsohn has articulated her methodology, that it is commonly applied by vocational counselors, and the sources on which she relied.  (*See, e.g.*, Mendelsohn Rpt at 1; Mendelsohn Dep. Tr. at 223:14-19, 224:13-22).  She explained that she researched brain injuries and their impact on employment, relied on reliable data sources, and considered multiple factors, including economic factors that weigh against Ms. Kaisinger retiring.  (*Id*. at 26:21-27:16, 28:11-29:25, 81:7-19, 203:14-22).  Defendants have "not suggested that the fundamental approach taken by [Ms. Mendelsohn] departs from accepted practice in the field of vocational science." *Weirich*, 2009 WL 920960, at *8.  This is not a case in which Ms. Mendelsohn did not provide "an inkling as to the standards controlling [her] method." *Elcock*, 233 F.3d at 747.

Defendants' challenge pertains to the "credibility, completeness, and thoroughness" of Ms. Mendelsohn's opinions, and challenges concerning the foundation of Ms. Mendelsohn's opinion can be "addressed through vigorous cross-examination [rather] than through threshold exclusion." *Orner*, 2015 WL 8334544, at *11.  For example, Defendants critique that Ms. Mendelsohn failed to review certain documents and did not conduct independent of testing Ms. Kaisinger.  (Mot. at 27-28.)  However, Ms. Mendelsohn explained at her deposition why she did not conduct any testing when evaluating Ms. Kaisinger (*see* Mendelsohn Dep. Tr. 226:10-22), and Defendants can challenge her explanation and the factual foundation of her opinion on cross-examination.  Mendelsohn's report "may not be perfect, [but] perfection is not the standard under Rule 702." *Weirich*, 2009 WL 920960, at *8. (citations omitted).  The standard for determining reliability "is not that high." *In re TMI Litig.,* 193 F.3d at 665.  We "need not find that [a vocational counselor's] methodology has the best foundation or is correct, and instead will leave such questions to the jury." *Weirich*, 2009 WL 920960, at *8.  Accordingly, Defendant's Motion to exclude the expert opinion of Ms. Mendelsohn will be denied.

### E.    Opinions Based on the SSA's Administrative Determination or Dr. Joely Esposito's Initial Testing

Defendants seek to exclude the Social Security Administration's 2018 determination that Ms. Kaisinger qualified as permanently disabled and opinions that rely on this administrative finding because the determination is inadmissible hearsay and its admission would "usurp the jury's role in deciding an ultimate issue."  (Mot. at 30-32.)  Defendants maintain that district courts routinely hold that administrative disability determinations are not admissible in personal injury cases and urge us to make the same ruling here.  (*Id*. at 31.)

Plaintiffs offer multiple reasons why the Social Security Administration's determination should not be excluded:  Both Plaintiffs and Defendants' experts relied upon the Social Security Administration's determination, and Plaintiffs argue that both experts are permitted to rely on this determination in formulating their opinions under Federal Rule of Evidence 703.  (Opp'n at 35-36.)  In addition, they argue that the probative value of the disability determinations from the Social Security Administration and the Philadelphia School District outweighs any prejudicial effect under Federal Rule of Evidence 403, and that Defendants have not demonstrated how they may be prejudiced should the jury hear evidence of the disability determinations.  (*Id*. at 36.)  In addition, Plaintiffs maintain that under Pennsylvania law, Ms. Kaisinger has discretion to introduce into evidence her Social Security disability status.  (*Id*. at 37.)

We agree with courts that have excluded Social Security disability determinations in personal injury cases and bar the parties from introducing evidence of or referring to the Social Security Administration's disability determination in this case.[5]  *See, e.g.*, *Mealy v. Ryan Env't, Inc.*, No. 06-109, 2010 3906145, at *4 (W.D. Pa. Sept. 29, 2010) ("Permitting the admission of the Social Security determination of disability would confuse the jury regarding the issue of liability, if not usurp its role entirely.").  "The lack of a meaningful adversarial process with respect to the cause, existence and extent of a plaintiff's alleged disability renders the [Social Security Administration's] conclusions on that issue unreliable."  *Villanueva v. Zimmer*, 69 A.3d 131, 142 (N.J. Super. Ct. App. Div.  2013).  "[A]dmission of the [Social Security Administration's determination] of disability would result in the substantial possibility of unfair prejudice by making it extremely difficult for the jury to conduct an independent evaluation of

relevant medical evidence bearing upon the nature and extent of [plaintiff]'s injuries attributable to the underlying accident." *Roach v. Hughes*, No. 13-136, 2016 WL 9460306, at *4 (W.D. Ky. Mar. 9, 2016); *see also Sabo v. Fiskars Bands, Inc.*, No. 12-503, 2015 WL 12750276, at *4 (D. Idaho Dec. 4, 2015) (holding that the disability determination of the Social Security Administration would be inadmissible at trial because "the determination made in the social security proceeding was subject to different standards and requirements specific to that proceeding" and is "irrelevant to the issues before the jury in this case and would be unduly prejudicial and confusing to the jury").  Since we find that evidence of the Social Security disability determination is inadmissible, expert opinions that reference or rely on the Social Security Administration's determination alone are also excluded.  *See Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc.*, No. 15-405, 2018 WL 7815202, at *8 (E.D. Pa. Dec. 13, 2018).

Plaintiffs argue that under Pennsylvania law, "should Ms. Kaisinger herself wish to admit facts of her disability status under Social Security into evidence, such evidence is permissible at the plaintiff's discretion."  (Opp'n at 37).  Plaintiffs rely on *Simmons v. Cobb*, 906 A.2d 582 (Pa. Super. Ct. 2006).  However, *Simmons* does not support Plaintiffs' proposition.  In *Simmons*, the plaintiff sought to introduce evidence at trial that he received social security disability benefits, and the trial court concluded that the plaintiff could not present such evidence under the collateral source rule.  906 A.2d at 583.  Under this rule, a defendant in a personal injury action cannot introduce evidence that a plaintiff received benefits from a collateral source for the same injuries that are alleged to have been caused by the defendant.  *Id.* at 585 (citation omitted).  The

---

[5] Defendants have not moved to exclude the disability determination of the Philadelphia School District, and relevant documents have not been presented to the Court.  Should Plaintiffs seek to introduce

Superior Court held that the trial court erred in applying the collateral source rule because it applies to defense offers of evidence, not to those made by a plaintiff. *Id.* Nevertheless, the appellate court found that any error was harmless because the experts had placed little reliance on evidence regarding plaintiff's social security disability benefits. *Id.* at 586. While *Simmons* demonstrates that the collateral source rule does not bar a plaintiff from introducing evidence of disability benefits, it does not address the prejudicial nature of such evidence or other bases for its exclusion that are at issue in this case. Plaintiffs' arguments for admitting evidence of the Social Security Administration's determination fail, and the parties are precluded from admitting into evidence the Social Security Administration's disability determination concerning Ms. Kaisinger or opinions relying upon or referencing it.

Defendants also argue that any opinions that are based on psychologist Dr. Esposito's 2016 test results and did not consider her 2020 test results should not be admitted. (*Id.* at 29-33.) In 2016, approximately five months after the incident at Walmart, Dr. Esposito conducted a neuropsychological evaluation of Ms. Kaisinger and concluded that she was moderately impaired. (*Id.* at 29-30.) In 2020, Dr. Esposito retested Ms. Kaisinger and she found that she was in the average range when corrected for her demographic and that her "cognitive functioning is largely intact." (*Id.*) Some of Plaintiffs' experts testified that they only relied on Dr. Esposito's 2016 testing and did not rely on Plaintiff's subsequent neuropsychological test results in 2020. (*Id.* at 30-31.) As a result, Defendants claim that these expert opinions are unreliable because they do not rely on all available information and are based on the opinion of another expert who subsequently conceded that Ms. Kaisinger was not disabled. (*Id.* at 32-33.) Further, Defendants claim that admitting their testimony may confuse the jury. (*Id.* at 33.)

---

this disability determination, it would appear that the same reasoning applies.

However, as Plaintiffs recognize (Opp'n at 37), we have already denied Defendants' motion to exclude Dr. Esposito's opinions (ECF No. 151).  Defendants' concerns about the extent to which Plaintiffs' experts did not rely upon the full spectrum of Dr. Esposito's opinions and testing results can be addressed through cross-examination and argument.  *See Weirich*, 2009 WL 920960, at *4-5 (holding that concerns about an expert's "apparent failure to examine various additional evidence both within and outside the record" can be addressed through cross-examination and "do not warrant preclusion for lack of proper factual foundation").

### F.    Social Media Activity of Walmart Corporate Representative

Defendants argue that social media posts from their 30(b)(6) deponent, Alexander Abramczyk, should be excluded because they were posted two years after Ms. Kaisinger's accident, are not probative of any issue in this case, and are unduly prejudicial.  (Mot. at 34-37.) Mr. Abramczyk testified that he did not work at the Walmart store at which the incident occurred at the time of the accident, in December 2015, and that he transferred to the store two and a half years after the incident, in May 2018.  (*Id*. at 34-35.)

In opposition, Plaintiffs maintain that the Facebook posts at issue are relevant to Plaintiffs' claims of negligent training, supervision, and retention because Mr. Abramcyzk described having to fire multiple Walmart employees for not following policies and procedures. (Opp'n at 38.)  The posts also may serve as impeachment evidence if Walmart argues that its store personnel were properly trained.  (*Id*.)  Plaintiffs state that these posts would not be used as character evidence to impeach a witness and are party admissions.  (*Id*.)  In addition, Plaintiffs maintain that the probative value of the evidence is not outweighed by any danger of prejudice to Defendants and, as such, the posts are admissible because they contain relevant information. (*Id*.)

19

We will delay ruling on this motion *in limine* until trial. For these social media posts to be admissible, Plaintiffs must lay a foundation that Mr. Abramczyk had knowledge of the conditions at the particular store in December 2015, and that the information in the posts from 2018 are relevant to, and an accurate description of, conditions in the particular store at the time of the accident and issues relevant to the litigation. *Cf. Sturm v. Clark Equip. Co.*, 547 F. Supp. 144, 145 (W.D. Mo. 1982) ("[E]vidence of the absence of prior accidents is relevant and admissible, assuming an adequate foundation is established regarding comparability of circumstances.")

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions are granted in part and denied in part as follows: (1) Plaintiffs are precluded from introducing evidence or arguments that Defendants spoliated the sign pole involved in the accident; (2) Plaintiffs are precluded from introducing evidence or arguments that Defendants spoliated the surveillance footage of the accident, and we will not issue an adverse inference or other spoliation sanction; (3) the reports, opinions, and testimony of Scott Jacoby are inadmissible; (4) Defendants' motion to exclude the reports, opinions, and testimony of Irene Mendelsohn is denied; (5) the parties are precluded from introducing evidence of the Social Security Administration's disability determination of Ms. Kaisinger and introducing opinions that rely on or reference the Social Security Administration's determination; (6) Defendant's motion to exclude any opinion based on Dr. Esposito's initial testing is denied; and (7) we defer a ruling on the admissibility of social media posts of 30(b)(6) deponent Alexander Abramczyk until trial. An appropriate Order follows.

**BY THE COURT:**


<u>**s/ _R. Barclay Surrick_**</u>
**R. BARCLAY SURRICK, J.**